**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

| | | |
|---|---|---|
| **PIERSON VALLES,** | § | |
| **Plaintiff,** | § | |
| | § | |
| v. | § | **CAUSE NO. 4:22-cv-00568** |
| | § | |
| **ACT, INC.,** | § | |
| **Defendant.** | § | |

**PLAINTIFF'S ORIGINAL VERIFIED COMPLAINT**

### I.   INTRODUCTION

1. Pierson Valles, Plaintiff ("Pierson"), brings this action for injunctive relief, attorneys' fees, and court costs against the ACT, Inc. ("ACT") under the Americans with Disabilities Act (the "ADA") and Section 504 of the Rehabilitation Act of 1973 ("Section 504").

2. Pierson is a seventeen year-old student high school student residing in Flower Mound, Texas, who has been diagnosed, among other things, with Mild Specific Learning Disorder with Impairment in Mathematics, Moderate Specific Learning Disorder with Impairment in Written Expression, Attention Deficit Hyperactivity Disorder, Auditory Processing and Working Memory Deficits, Visual Processing Deficits, and Fine Motor/Handwriting Deficits.  Individually and collectively, these diagnoses reflect that Pierson has one or more disabilities as defined by the ADA and Section 504.

3. Pierson is preparing to apply for early admission to college and must take standardized tests to give himself a fair and equitable opportunity for such early admission into his preferred schools.  Colleges and universities use such scores as a tool to compare the relative abilities of applicants.

4.       Defendant ACT, Inc., develops and administers the ACT[1] exam, a standardized examination used by many colleges and universities throughout the United States.  As noted on ACT's website, "[e]ach year, ACT serves millions of students, job seekers, schools, government agencies, and employers in the US and around the world with learning resources, assessments, research, and credentials designed to help them succeed from elementary school through career."[2]

5.       The benefits of scoring well on the ACT exam are not limited to enhanced opportunity for admission to a chosen university or college.  As the ACT itself asserts on its website, not only can taking the ACT examination "[i]ncrease your chances for getting into the college of your choice,"[3] but it can "increase your chances of earning new or better scholarships" and be used by colleges and universities "to place you in the right classes at the right level."[4]

6.       Pierson seeks to take the ACT exam as part of his effort to obtain early admission into his chosen colleges and universities.  In light of his disabilities, Pierson has requested reasonable accommodations with respect to certain aspects of the ACT testing process.  Specifically, Pierson has requested preferential and an increase in the testing time allotted by a factor of fifty percent (time and one half).  These accommodations are required for Pierson to have a fair and equal opportunity to obtain a score on the test that reflects his actual abilities—a reasonable goal in that it is precisely the purpose of such a standardized test to measure such abilities in a fair and equal manner.

---

[1] ACT was originally an acronym for American College Testing.
[2] *See* www.act.org (last reviewed on July 5, 2022).
[3] *See* www.act.org (last reviewed on July 5, 2022).
[4] *See* www.act.org/content/act/en/reasons-to-take-the-act.html (last reviewed on July 5, 2022)

7. However, the ACT has denied Pierson's request for these accommodations. Rather than providing any grounds for such denial specifically tailored to Pierson's factual circumstances, the ACT has merely provided generic justifications for the denial that do not provide Pierson with sufficient wherewithal with which to ascertain the specific factual bases for the denial. Moreover, in the course of the denial, as explained below, the ACT has advanced certain theories regarding the nature and characteristics of disability that are discriminatory on their face.

8. The ACT offers its last testing administration date for the summer of 2022 on July 16, 2022. Pierson has registered for this July 2022 testing administration, but he requires the reasonable accommodations he requests to have a fair and equal chance at a score on the ACT exam that reflects his actual abilities relative to his peers. The ACT continues to deny his request.

9. Without the appropriate accommodations, Pierson will lack a fair and equal opportunity to show his aptitude and skill levels on the ACT and will thus lack a fair and equal opportunity to compete for early admission into, to receive scholarships and other benefits from, and to obtain proper placement considerations at his chosen colleges and universities. As colleges and universities often serve as gatekeepers for future careers and life-trajectories, Pierson thus faces the prospect of irreparable harm—harm exacerbated by the fact that it arises from forms of disability discrimination recognized by Congress in the civil rights statutes as "continu[ing] to be a serious and pervasive social problem." 42 U.S.C. § 12101(a)(2).

10. In light of the continued wrongful conduct of Defendant ACT, Pierson seeks injunctive relief in the form of a temporary restraining order, a preliminary injunction, and finally a permanent injunction to prevent Defendant ACT from wrongfully continuing to deny

him the reasonable accommodations he seeks in the form of preferential seating and an increase in the testing time allotted by a factor of fifty percent (time and one half).

## II. JURISDICTION AND VENUE

11. This Court has jurisdiction over this action and may grant the relief sought herein pursuant to 28 U.S.C. §§ 1331 and 1343 by virtue of claims brought pursuant to the ADA, 42 U.S.C. § 12101 *et seq.*, and Section 504, 29 U.S.C. § 794.

12. Venue is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims alleged herein occurred in this district in Flower Mound, Texas, located primarily in Denton County. Furthermore, Defendant is doing business in this judicial district by virtue of administering the ACT exam in this district and has sufficient contacts for personal jurisdiction.

## III. PARTIES

13. Pierson is a seventeen year-old high school student who resides in Flower Mound, Texas. He has multiple disabilities for purposes of the ADA and Section 504. He intends to take the ACT exam on July 16, 2022.

14. Defendant ACT, Inc., is a not-for-profit organization headquartered in Iowa City, Iowa. ACT develops and administers the ACT exam, a standardized examination used in the admission process by many colleges and universities in the United States. ACT is a private entity that offers examination related to applications and credentialing to postsecondary education, professional and trade purposes and is thus subject to the non-discrimination and reasonable accommodation requirements of the ADA. ACT administers the ACT examination throughout the country, including Texas and specifically including the Eastern District of Texas.

15. ACT engages in business in Texas and in this judicial district, and this action arises from those business activities.

## IV.   FACTS

16. Pierson is a seventeen year-old student high school student residing in Flower Mound, Texas, who has been diagnosed, among other things, with Mild Specific Learning Disorder with Impairment in Mathematics, Moderate Specific Learning Disorder with Impairment in Written Expression, Attention Deficit Hyperactivity Disorder, Auditory Processing and Working Memory Deficits, Visual Processing Deficits, and Fine Motor/Handwriting Deficits.  Individually and collectively, these diagnoses reflect that Pierson has one or more disabilities as defined by the ADA and Section 504.

17. These diagnoses appear, for example, in a report drafted by a licensed psychologist drafted in 2022 based on testing in January of that year.  As explained in that report, Pierson's attention difficulties, visual processing issues, and other disability manifestations increased as a result of four concussions, the latest of which required him to undergo a concussion cognitive rehabilitation protocol.  Testing demonstrated a Very Superior rating on the General Abilities Index, which the licensed psychologist considered a more accurate estimate of Pierson's true abilities than the Full Scale IQ test.  Pierson demonstrated significant weaknesses with respect to short-term working memory and processing speed skills, along with moderate difficulties with auditory attention, auditory processing, and auditory working memory.  The licensed psychologist recommended preferential seating and extended test time for all classes and testing.  The licensed psychologist specifically noted the need for extended time on the ACT test and other standardized examinations.

18.     Pierson is preparing to apply for early admission to college and must take standardized tests to give himself a fair and equitable opportunity for such early admission into his preferred schools.  Colleges and universities use such scores as a tool to compare the relative abilities of applicants.

19.     Defendant ACT, Inc., develops and administers the ACT[5] exam, a standardized examination used by many colleges and universities throughout the United States.  As noted on ACT's website, "[e]ach year, ACT serves millions of students, job seekers, schools, government agencies, and employers in the US and around the world with learning resources, assessments, research, and credentials designed to help them succeed from elementary school through career."[6]  In particular, the ACT assessment purports to provide an indicator of college readiness.

20.     The benefits of scoring well on the ACT exam are not limited to enhanced opportunity for admission to a chosen university or college.  As the ACT itself asserts on its website, not only can taking the ACT examination "[i]ncrease your chances for getting into the college of your choice,"[7] but it can "increase your chances of earning new or better scholarships" and be used by colleges and universities "to place you in the right classes at the right level."[8]

21.     The ACT assessment is administered within the United States on seven test dates each year in September, October, December, February, April, June and July.

22.     Pierson seeks to take the ACT exam as part of his effort to obtain early admission into his chosen colleges and universities.  In light of his disabilities, Pierson has requested reasonable accommodations with respect to certain aspects of the ACT testing process.

---

[5] ACT was originally an acronym for American College Testing.
[6] *See* www.act.org (last reviewed on July 5, 2022).
[7] *See* www.act.org (last reviewed on July 5, 2022).
[8] *See* www.act.org/content/act/en/reasons-to-take-the-act.html (last reviewed on July 5, 2022)

Specifically, Pierson has requested preferential seating and an increase in the testing time allotted by a factor of fifty percent (time and one half).  These accommodations are required for Pierson to have a fair and equal opportunity to obtain a score on the test that reflects his actual abilities—a reasonable goal in that it is precisely the purpose of such a standardized test to measure such abilities in a fair and equal manner.

23. However, the ACT has denied Pierson's request for these accommodations.  Initially, the ACT denied Pierson's request on April 5, 2022.  Rather than providing any grounds for such denial specifically tailored to Pierson's factual circumstances, the ACT merely provided generic justifications for the denial that did not provide Pierson with sufficient wherewithal with which to ascertain the specific factual bases for the denial.  For example, the denial stated as follows: "The request indicates that you did not receive this diagnosis until recently, and/or your documentation does not support a history of difficulties associated with this diagnosis."  This basis for the denial, restated in other variations elsewhere in the correspondence, made little sense to Pierson and his family as they had already provided the report from the licensed psychologist that explained the impact of Pierson's four concussions on the symptomatology associated with his attention and processing disorders.  Moreover, nothing in the ADA requires a lengthy "history of difficulties associated with [a particular] diagnosis."[9]  Likewise, the ADA requires that reports of those who have personally evaluated an applicant take precedence over the views of reviewers who have not.  *See* 28 C.F.R. pt. 36, app. A, at 796.  In this case, the

---

[9] *See, e.g.*, Final Report of the Best Practices Panel, established through Consent Decree in *The Department of Fair Employment and Housing v. Law School Admission Council, Inc.*, Case No. 3:12-cv-01830-JCS (N.D. Cal.), Dkt. No. 209-1, upheld in relevant part by 2015 U.S. Dist. LEXIS 104751 (N.D. Cal. Aug. 7, 2015).  In particular, *see* Final Panel Report at 14 ("Reviewers shall not presume that a candidate does not have a disability when there is no history of a disability or record of use of testing accommodations.  A variety of factors can delay the identification of a disability . . . .")

report of the licensed psychologist was completely uncontroverted.  Furthermore, the College Board, another private entity that develops and administers the Scholastic Aptitude Test (the "SAT") had no difficulty in granting Pierson's requested accommodations as both reasonable and appropriate.  Nevertheless, they submitted further information to the ACT to show the need for these accommodations, including correspondence from Pierson's board-certified pediatrician. The pediatrician further explained the impact of Pierson's four concussions, which resulted in episodes of extreme confusion and incoherence.  Based on her own work with Pierson, neurocognitive assessments, and her review of the testing done by the licensed psychologist in January 2022, the pediatrician concurred with the recommendations made by the licensed psychologist, including that Pierson have preferential seating and extended time on standardized testing administrations.

24. Nevertheless, the ACT denied Pierson's requested accommodations once more in correspondence dated May 9, 2022.  Some of the bases for the denial put forward were so non-specific as to make it impossible to determine how they applied to Pierson, if at all.  For example, the denial letter asserted such platitudes as: "ACT provides testing accommodations in accordance with the Americans with Disabilities Act (ADA).  The purpose of accommodations is to promote equal access for an individual with a disability."  Likewise, the letter stated: "Accommodations are outcome neutral—that is, they are not intended to provide an advantage." These kinds of assertions provided no information to Pierson as to the basis for the denial of his requests.

25. The only substantive explanation for the denial, other than a reiteration of the mysterious assertion that Pierson needed to show the same educational impact over a more extended period of time to demonstrate his disability for purposes of the ADA, was as follows:

> The requested accommodation is not approved because:
> - A difference between intelligence and achievement, on its own, does not indicate a disability under the Americans with Disabilities Act (ADA).
>   - By 2017, it had been well-known for many years that the diagnosis of (learning) disability based on discrepancy analysis (aptitude-aptitude and aptitude-achievement) is invalid.
>   - It is not uncommon for individuals to display differences between their highest and lowest scores.
> - Scores falling within or above the average range, no matter how discrepant from your IQ, do not satisfy ADA requirements for a disability, which are referenced to the functioning of most people in the general population.
> - While the submitted evaluation suggests discrepancies between your cognitive and achievement skills, your achievement was within or above the average range for your age.
> - Objective evidence which shows functioning in a major life activity (e.g., reading, thinking, concentrating) below the average person may provide additional support for this request.

As an initial matter, this assertion does not explain precisely what the ACT found lacking in Pierson's documentation. After all, as noted above, Pierson had already provided substantial documentation as to the impact of the four concussions on his disability manifestations, rendering them considerably more acute in recent years. Furthermore, he nowhere relied exclusively on the discrepancy between cognitive and achievement skills as the basis for his request for a reasonable accommodation. Rather, his evaluators pointed to such discrepancies by way of confirmation of and evidence for the disabilities underlying that request. Finally, this basis for the denial by the ACT implies that an applicant can show a disability only if the testing scores relied on as evidence for that disability fall below the scores achieved by the average test-taker. However, this approach fails for at least two reasons. First, it discriminates against the highly intelligent applicant with a disability who can overcome the effects of that disability sufficiently to score higher than the average test-taker, but not in such a manner as to achieve the scores that he or she would have achieved in the absence of the disability. Second, it tends to predetermine the effective scoring range of the applicants at issue. Those who receive

accommodations are only those who would otherwise score below average and thus, by extension, would presumably receive accommodations only to the extent those accommodations are needed to push them just into the average range.  Those who would not otherwise score below average will receive no accommodations and will thus score in a range determined not just by aptitude, but by the disability or disabilities as well.  Far from providing applicants with disabilities an equal playing field, such an approach willfully refuses to address the impact of the disability on an affected applicant's performance.

26.     Pierson himself has the intellectual aptitude to achieve scores on standardized examinations that exceed those of the average population, despite his multiple disabilities.  However, his disabilities prevent him from achieving scores on standardized examinations that reflect his actual aptitude, which is precisely what standardized tests are intended to measure.  Pierson's attention and processing deficits were explained and evidenced in his evaluations both independently of testing and as factors that brought down his composite testing scores.  Both the attention and processing deficits substantially limit Pierson's ability to learn, to concentrate, and to think relative to the general population, but are often masked by his superior abilities in other aspects.

27.     In response to the second denial from ACT, Pierson and his family sent further information explaining his disabilities that further demonstrated that such disabilities were not evidenced merely by discrepancies between tested intelligence and achievement.  The documentation showed that, while practice helped Pierson improve his testing accuracy, it did not help him improve his processing time, thus providing evidence that the processing difficulties arose from Pierson's disability.  The documentation also included correspondence

from Pierson's attorney, explaining the relevant law and its application to the above-described facts. Nevertheless, ACT denied the accommodation requests a third time.

28. ACT offers its last testing administration date for the summer of 2022 on July 16, 2022. Pierson has registered for this July 2022 testing administration, but he requires the reasonable accommodations he requests to have a fair and equal chance at a score on the ACT exam that reflects his actual abilities relative to his peers. As explained above, ACT continues to deny his request.

29. Without the appropriate accommodations, Pierson will lack a fair and equal opportunity to show his aptitude and skill levels on the ACT and will thus lack a fair and equal opportunity to compete for early admission into, to receive scholarships and other benefits from, and to obtain proper placement considerations at his chosen colleges and universities. As colleges and universities often serve as gatekeepers for future careers and life-trajectories, Pierson thus faces the prospect of irreparable harm—harm exacerbated by the fact that it arises from forms of disability discrimination recognized by Congress in the civil rights statutes as "continu[ing] to be a serious and pervasive social problem." 42 U.S.C. § 12101(a)(2).

30. In light of the continued wrongful conduct of Defendant ACT, Pierson seeks injunctive relief in the form of a temporary restraining order, a preliminary injunction, and finally a permanent injunction to prevent Defendant ACT from wrongfully continuing to deny him the reasonable accommodations he seeks in the form of preferential seating and an increase in the testing time allotted by a factor of fifty percent (time and one half).

V. **CAUSE OF ACTION: VIOLATION OF THE ADA**

31. The allegations listed in paragraphs 1-30 above are incorporated herein by reference.

32. Plaintiff is an individual with a disability within the meaning of the ADA, 42 U.S.C. § 12101, *et seq*. Accordingly, Plaintiff is a qualified individual within the meaning of the ADA in that he meets all the eligibility criteria for taking the ACT examination.

33. Plaintiff requires the reasonable accommodations he has requested to participate in a fair, full, and equal basis on the ACT. The accommodations that Plaintiff has requested—preferential seating and 50% extended time—would not impose a fundamental alteration or undue burden on ACT, but would allow Pierson to take the ACT examination on an equal playing field and would allow the examination to measure his abilities and aptitude fairly and accurately.

34. Defendant administers the ACT examination, which is an examination related to applications and credentialing for postsecondary education, professional, and trade purposes, within the meaning of the ADA, 42 U.S.C. § 12189.

35. The ADA, 42 U.S.C. § 12189, requires Defendant to offer this examination in a manner accessible to persons with disabilities.

36. Title III of the ADA deems discriminatory "a failure to make reasonable modifications to policies, practices, and procedures when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations[.]" 42 U.S.C. § 12182(b)(2)(A)(ii).

37. Granting Plaintiff the reasonable accommodations he requests would not fundamentally alter the nature of any goods, services, facilities, privileges, advantages, or accommodations provided by Defendant.

38. The applicable regulations promulgated by the Department of Justice mandate that a private entity offering examinations modify its examination as necessary to ensure full and equal access to persons with disabilities, including through the provision of extra time to permit completion." 28 C.F.R. §§ 36.309(b) & (c).

39. The applicable regulations promulgated by the Department of Justice prohibit Defendant from administering the ACT examination without ensuring that the scores reported "accurately reflect the applicant's aptitude or achievement level or whatever other factor the test purports to measure, rather than reflecting the applicant's [disability]." 28 C.F.R. § 36.309(b)(1)(i).

40. The ADA Guidance promulgated by the Department of Justice further provides that "[r]eports from experts who have personal familiarity with the candidate should take precedence over those from, for example, reviewers for testing agencies, who have never personally met the candidate or conducted the requisite assessments for diagnosis and treatment." 28 C.F.R. pt. 36, app. A, at 796.

41. Defendant has discriminated and continues to discriminate against Plaintiff on the basis of his disability by denying him an equal opportunity to demonstrate his aptitude and achievement level on the ACT examination in violation of the ADA, specifically 42 U.S.C. §§ 12182 and 12189, and its implementing regulations, including 28 C.F.R. § 36.309.

42. Defendant's discriminatory policies and practices violate Plaintiff's rights under the ADA and its implementing regulations. Defendant's discriminatory policies include but are not limited to:

    a. Failure to grant requested reasonable accommodations when Plaintiff submitted appropriate documentation justifying those accommodations.

    b. Failure to give appropriate weight to Plaintiff's evaluators.

    c.    Failure to provide a clear explanation for denial.

    d.    Failure to offer examination in a manner that is accessible to individuals with disabilities and best ensures that the examination accurately reflects Plaintiff's aptitude, achievement level, or whatever other factor the examination purports to measure.

    e.    Failure to engage in good faith in the interactive process to consider and to implement effective accommodations with respect to Plaintiff's disability.

    f.    Failure to conduct a proper review and to apply appropriate legal standards to Plaintiff's request for reasonable and appropriate accommodations.

    g.    Placing an extreme burden of proof, beyond what is required by the ADA, to establish Plaintiff's disability or need for accommodations.

43. Plaintiff will be irreparably harmed if Defendant continues its unlawful refusal to provide him the reasonable and appropriate test accommodations he requests and unless this Court grants injunctive relief prohibiting the continued violation of Plaintiff's rights under the ADA and compelling Defendant to provide the requested accommodations.

44. Defendant will not be harmed if this Court grants the requested injunctive relief. Thus, the balancing of harms favors granting the requested injunctive relief.

45. The public interest will be served by granting the requested injunctive relief. The ADA was enacted as a matter of public policy to ensure that persons with disabilities are treated fairly and provided with opportunities equal to those persons in the community without disabilities. The public interest will not be served by allowing Defendant to continue its unlawful refusal to provide Plaintiff with the ADA accommodations to which he is justly entitled.

46. Defendant's conduct constitutes an ongoing and continuous violation of the ADA. Unless enjoined from doing so, Defendant will continue to violate the ADA. This conduct,

unless enjoined, will continue to inflict injuries for which Plaintiff has no adequate remedy at law. Consequently, Plaintiff is entitled to injunctive relief under the ADA, 42 U.S.C. § 12188.

## VI.   CAUSE OF ACTION: VIOLATION OF SECTION 504

47. The allegations listed in paragraphs 1-46 above are incorporated herein by reference.

48. Section 504 of the Rehabilitation Act of 1973 mandates that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance[.]" 29 U.S.C. § 794(a).

49. Such federally funded programs and activities may not "[a]fford a [person with a disability] an opportunity to participate in or benefit from the aid, benefit, or service that is not equal to that afforded others[.]" 45 C.F.R. § 84.4(b)(1)(ii). On the contrary, they must "afford [persons with disabilities] equal opportunity to obtain the same result, to gain the same benefit, or to reach the same level of achievement, in the most integrated setting appropriate to the person's needs." 45 C.F.R. § 84.4(b)(2).

50. Defendant receives federal grants, contracts, and other financial assistance, thereby subjecting itself to the requirements of Section 504.

51. Plaintiff is a qualified individual with a disability under Section 504.

52. Defendant has, solely by reason of Plaintiff's disability, excluded Plaintiff from participation in, denied him the benefits of, and otherwise discriminated against him in its service, programs or activities.

53. As a proximate result of Defendant's discrimination, Plaintiff has suffered and continues to suffer irreparable harm.

## VIII. RELIEF REQUESTED

54. WHEREFORE, Plaintiff prays that the Court enter an ORDER:

a. Temporarily restraining and then preliminarily enjoining Defendant from continuing to refuse to grant Plaintiff's request for reasonable accommodations on the ACT examination and specifically on its July 16, 2022, administration, including preferential seating and an increase in the testing time allotted by a factor of 50% (time and one half);

b. After a final hearing on the merits, converting the temporary restraining order and preliminary injunction referenced in paragraph (a) above into a permanent injunction;

c. Awarding Plaintiff attorney fees and costs, pursuant to the ADA and Section 504; and

d. Granting Plaintiff such additional relief as the interests of justice may require.

DATED: July 7, 2022

Respectfully submitted,

s/ Mark Whitburn
Mark Whitburn
Texas Bar No. 24042144
Sean Pevsner
Texas Bar No. 24079130
Whitburn & Pevsner, PLLC
2000 E. Lamar Blvd., Suite 600
Arlington, Texas 76006
Tel: (817) 653-4547
Fax: (817) 653-4477
mwhitburn@whitburnpevsner.com

Attorneys for Plaintiffs

## VERIFICATION

THE STATE OF TEXAS  §
　　　　　　　　　　§
DENTON COUNTY　　　§

　　　BEFORE ME, the undersigned Notary Public, on this day personally appeared Charles Valles who, after being by me duly sworn, upon his oath stated that he has personal knowledge of the facts stated in the foregoing Plaintiff's Original Verified Complaint and that each and every statement of fact contained in that Plaintiff's Original Verified Complaint is true and correct.

　　　　　　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　　　　　Charles Valles

　　　SUBSCRIBED AND SWORN TO BEFORE ME on the 5th day of July, 2022, to certify which witness my hand and official seal.



_____
Notary Public in and for the State of Texas