# EXHIBIT J

**WHITBURN & PEVSNER, PLLC**

2000 E. Lamar Boulevard, Suite 600
Arlington, Texas 76006
Office Number: (817) 653-4547
Facsimile: (817) 653-4477
www.whitburnpevsner.com

June 10, 2022

ACT Special Testing
P.O. Box 1028
Iowa City, Iowa 52243-4028

*Re*: Testing Accommodations re Pierson Valles

Dear ACT Special Testing,

I and my law firm represent Pierson Valles ("Pierson") in connection with his effort to obtain the appropriate testing accommodations for the ACT. Please have any attorneys that may represent ACT Special Testing in this matter direct all communications to my office.

Pierson requested reasonable testing accommodations for the ACT with a Psychoeducational Report (the "Report") from a Licensed Psychologist dated January 22, 2022. This report documented that Pierson has a learning disability in the areas of mathematics, written expression and grammar. It also showed that he has Attention Deficit Hyperactivity Disorder ("ADHD"). The Report recommended, among other things, extended time on standardized tests, making specific reference to the ACT.

Accordingly, Pierson requested preferential seating and one and one-half extended time to take the ACT. These are the same accommodations that Pierson received for the PSAT/NMSQT, SAT and AP exams. The College Board approved these testing accommodations for the above-mentioned standardized tests on April 4, 2022. On April 5, 2022, the ACT denied Pierson's accommodation requests. This denial was inappropriate and impermissible under applicable law.

The ACT must provide appropriate testing accommodations to eligible examinees with disabilities, such as Pierson, under Title III of the Americans with Disabilities Act (the "ADA"). As an initial matter, Pierson is an eligible examinee with learning disabilities under the ADA. See 42 U.S. Code § 12102(1):

> The term "disability" means, with respect to an individual—
> (A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or
> (C) being regarded as having such an impairment (as described in paragraph (3)).

Major life activities, in turn, "include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12012(2)(A). Pierson has learning disabilities that substantially limit, at a minimum, his ability to learn, read, concentrate, and think. As

1



2600 E. Lamar Boulevard, Suite 600
Arlington, Texas 76006
Office Number: (817) 653-4547
Facsimile: (817) 653-4477
www.whitburnpevsner.com

noted above, Pierson provided documentation concerning his ADHD and learning disabilities to ACT from a Licensed Psychologist. He qualifies as disabled for purposes of the statute at issue.

The ACT is an entity required to provide appropriate testing accommodations under such circumstances. Pursuant to 42 U.S.C. § 12189:

> Any person that offers examinations or courses related to applications, licensing, certification, or credentialing for secondary or postsecondary education, professional, or trade purposes shall offer such examinations or courses in a place and manner accessible to persons with disabilities or offer alternative accessible arrangements for such individuals.

The ACT falls squarely within these parameters.

As an explanation for its denial of Pierson's requested accommodations, the ACT's April 5, 2022 ACT letter to Pierson states that "[i]t appears from the submitted documentation that [Pierson has] progressed through classes and grade levels without having accommodations until recently," and [Pierson's] request indicates that [he] did not receive this diagnosis until recently." However, these facts do not support a denial of the requested accommodations. The ADA technical support manual promulgated by the United States Department of Justice specifically states that

> someone with a learning disability may achieve a high level of academic success, but may nevertheless be substantially limited in one or more of the major life activities of reading, writing, speaking, or learning, because of the additional time or effort he or she must spend to read, write, speak, or learn compared to most people in the general population.

See https://www.ada.gov/regs2014/testing_accommodations.html#:~:text= For%20example%2C%20someone%20with%20a%20learning%20disability%20may,co mpared%20to%20most%20people%20in%20the%20general%20population.

Moreover, Pierson has provided documentation to explain the fact that his disabilities impact him to a greater degree now than they have historically. In an April 26, 2022 letter submitted to the ACT, Pierson's pediatrician explained that Pierson's series of concussions over the last four years led to bouts of extreme confusion and incoherence after which neurocognitive testing revealed and confirmed the learning disorders and deficits at issue. Thus, due to Pierson's recent injuries, his disabilities manifest themselves more distinctly than they did previously. However, they are not any the less disabilities for that reason and are no less in need of accommodation.

As a general matter, the ADA requires "reasonable accommodations for persons with disabilities, to provide them 'an even playing field' . . . ." *Bedford v. Michigan*, 722 Fed. Appx. 515, 519 (6th Cir. 2018). As the ACT itself admits in its May 9, 2022, correspondence, the "purpose of accommodations is to promote equal access for an

2



2000 E. Lamar Boulevard, Suite 600
Arlington, Texas 76006
Office Number: (817) 653-4547
Facsimile: (817) 653-4477
www.whitburnpevsner.com

individual with a disability." Here, Pierson has not received the accommodations necessary to even the playing field over which the ACT presides. While the ACT notes in its May 9, 2022, correspondence that a "difference between intelligence and achievement, on its own, does not indicate a disability under the Americans with Disabilities Act (ADA)," it should be kept in mind that the entire point of a standardized test is to determine the relative abilities of the individuals taking the exam. If the ACT refuses to accommodate any but those whose scores do not fall "within or above the average range," then it is failing to provide either an even playing field or equal access to certain individuals with disabilities, such as Pierson, who have the wherewithal to score within a certain range even in the face of their disabilities. Such an approach would prevent the standardized test from providing accurate comparisons between such individuals with disabilities and their peers without disabilities, despite the fact that it is precisely this that a reasonable testing accommodation is designed to accomplish. In any event, Pierson does not establish his disabilities merely by showing a difference between his intelligence and his achievement. On the contrary, the Report provides evidence of Pierson's processing delays, distractibility, and other difficulties that go well beyond small differences in intelligence measures and achievement measures. Pierson is not only disabled for purposes of the ADA, but he requires accommodations to address the impact of his disabilities.

Moreover, the ACT has not engaged appropriately in the prescribed interactive process in addressing Pierson's request for a reasonable accommodation. *See, e.g.*, *Kleiber v. Honda of Am. Mfg.*, 485 F.3d 862, 871 (6th Cir. 2007) ("Even though the interactive process is not described in the statute's text, the interactive process is mandatory, and both parties have a duty to participate in good faith.") (citations omitted). Here, Pierson's pediatrician for the past six years made good faith responses to the ACT's inquiries regarding Pierson's circumstances. The ACT did not specify any explanation offered by the pediatrician that it found lacking in any way or for which it required supplementation. Instead, the ACT simply continued its denial in its May 9, 2022 correspondence based on ostensibly the same grounds—the fact that Pierson had not always shown precisely the same level of difficulty—i.e., had not shown "pervasive academic or real-world difficulties over time." Pierson's disabilities have not always manifested themselves in the same way. Since his concussions, they have manifested themselves in ways that require accommodation in the requested manner. The fact that these manifestations have not remained historically constant does not mean that ACT has no obligation to accommodate them. It does have such an obligation, and Pierson thus renews his request for such accommodations.

Thank you very much in advance for your prompt consideration of this correspondence and the issues discussed. Both I and my client look forward to your response.

Sincerely,

*Mark Whitburn*

Mark Whitburn

3