# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| PIERSON VALLES,<br> *Plaintiff,* | §<br>§<br>§ | |
| v. | §<br>§<br>§ | Civil Action No. 4:22-CV-00568<br>Judge Mazzant |
| ACT, INC.,<br> *Defendant.* | §<br>§<br>§ | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Plaintiff's Emergency Motion for a Temporary Restraining Order (Dkt. #2). Having considered the motion and the relevant pleadings, the Court finds that the motion should be **DENIED**.

### BACKGROUND

Plaintiff Pierson Valles ("Valles") filed this lawsuit on July 7, 2022, against Defendant ACT, Inc. ("ACT"). Valles alleges that ACT violated the Americans with Disabilities Act (the "ADA") and Section 504 of the Rehabilitation Act of 1973 ("Section 504") when it denied him disability accommodations for the upcoming July 16, 2022 ACT test (the "July ACT Test").

ACT is a not-for-profit educational organization headquartered in Iowa City, Iowa. ACT develops and administers a number of standardized tests, including the ACT Test. The ACT Test is a standardized examination used for college admissions in the United States. The ACT Test is offered seven times annually at multiple testing locations in each state, including locations within the Eastern District of Texas. Valles is an eighteen-year-old, rising senior high school student residing within this District who is currently registered to take the July ACT Test.

Valles asserts he has been diagnosed with the following conditions:

> Mild Specific Learning Disorder with Impairment in Mathematics[;] Moderate Specific Learning Disorder with Impairment in Written Expression[;] Attention

1

Deficit Hyperactivity Disorder[;] Auditory Processing and Working Memory Deficits[;] Visual Processing Deficits[;] and Fine Motor/Handwriting Deficits

(Dkt. #1 ¶ 2). On March 30, 2022, Valles requested ACT provide him with certain disability accommodations in light of the diagnoses indicated above. Specifically, Valles requested "preferential seating and an increase in the testing time allotted by a factor of fifty percent (time and one half)" (Dkt. #1 ¶ 10). On April 5, 2022, ACT denied Valles' request (*see* Dkt. #2, Exhibit 5). After receiving the denial, Valles submitted a request for reconsideration on April 28, 2022. On May 9, 2022, ACT again denied Valles' request (*see* Dkt. #2, Exhibit 8). This process repeated once more, with ACT issuing a third denial of Valles' request for accommodations on June 24, 2022 (*see* Dkt. #2, Exhibit 11).

On July 7, 2022, Valles filed the present motion (Dkt. #2). Valles requests the Court issue a temporary restraining order enjoining ACT "from wrongfully continuing to deny him the reasonable accommodations he seeks" (Dkt. #2 at p. 23). On July 13, 2022, ACT filed its response (Dkt. #7). On July 15, 2022, the Court held a hearing on Valles' motion during which both parties presented arguments on their respective positions.

## LEGAL STANDARD

A party seeking a temporary restraining order must establish the same elements needed to obtain a preliminary injunction: (1) a substantial likelihood of success on the merits; (2) a substantial threat plaintiff will suffer irreparable harm if the injunction is not granted; (3) the threatened injury outweighs any damage the injunction might cause the defendant; and (4) the injunction will not disserve the public interest. *Nichols v. Alcatel USA, Inc.*, 532 F.3d 364, 372 (5th Cir. 2008). "A preliminary injunction is an extraordinary remedy and should only be granted if the plaintiffs have clearly carried the burden of persuasion on all four requirements." *Id.* Nevertheless, a movant "is not required to prove its case in full at a preliminary injunction

2

hearing." *Fed. Sav. & Loan Ins. Corp. v. Dixon*, 835 F.2d 554, 558 (5th Cir. 1985) (quoting *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981)). The decision whether to grant a preliminary injunction lies within the sound discretion of the district court. *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 320 (1982).

## ANALYSIS

Valles requests the Court issue a temporary restraining order enjoining ACT from continuing to deny him disability accommodations for the July ACT Test. ACT argues that Valles has not satisfied the standard for granting a temporary restraining order. For the reasons discussed below, the Court finds that a temporary restraining order is not warranted in this case.

As a preliminary matter, ACT contends that the parties' disputes are subject to a binding arbitration agreement (*see* Dkt. #7, Exhibit 2 at pp. 9–10). However, despite pointing out the existence of an arbitration agreement, ACT did not request the Court compel the parties to arbitration at this time. Further, even if the parties are bound to resolve their issues by arbitration, Section 14(b) of the agreement states that "arbitration will be administered by the American Arbitration Association ('AAA'), under the AAA Consumer Arbitration Rules ('Consumer Rules')" Dkt. #7, Exhibit 2 at p. 9). Under Rule 37 of the AAA Consumer Rules, notwithstanding an arbitration agreement between the parties, a party may seek interim relief, including a temporary restraining order, from either a court or an arbitrator. AM. ARB. ASSOC. R-37(a), (d). Thus, here, the Court "has discretion to grant injunctive relief to preserve the status quo pending arbitration." *N. Am. Deer Registry, Inc. v. DNA Sols., Inc.*, No. 4:17-CV-00062, 2017 WL 2402579, at *3–4 (E.D. Tex. June 2, 2017). Accordingly, the Court now turns to Valles' motion for injunctive relief.

District courts assess four factors in analyzing injunctive relief: (1) whether the plaintiff has a strong likelihood of succeeding on the merits; (2) whether the plaintiff will suffer irreparable

injury absent the injunction; (3) whether issuing the injunction will cause substantial harm to others; and (4) whether the public interest will be furthered by the issuance of the injunction. *Nichols*, 532 F.3d at 372. The Court will address each factor in turn.

**I.     Likelihood of Success on the Merits**

To prevail on a motion for a temporary restraining order, the first factor a movant must demonstrate is a substantial likelihood of success on the merits. However, a movant need not prove his case with absolute certainty. *See Lakedreams v. Taylor*, 932 F.2d 1103, 1109 n.11 (5th Cir. 1991). "A reasonable probability of success, not an overwhelming likelihood, is all that need be shown for preliminary injunctive relief." *Casarez v. Val Verde Cnty.*, 957 F. Supp. 847, 858 (W.D. Tex. 1997).

Here, Valles' claims are based on alleged violations of the ADA and Section 504.[1] The ADA, 42 U.S.C. § 12132, *et seq.*, prohibits discrimination against persons with disabilities in examinations for post-secondary education. 42 U.S.C. § 12189. Discrimination includes failure to make "reasonable accommodations to . . . known physical or mental limitations." *Id.* at § 12112(b)(5)(A). A person is disabled within the meaning of the ADA if he suffers from "a physical or mental impairment that substantially limits one or more major life activities of such individual." *Id.* at § 12102(1)(A). Major life activities "include, but are not limited to . . . learning, reading, concentrating, thinking, communicating, and working." *Id.* at § 12102(2)(A). While "'substantially limits' is not meant to be a demanding standard," 29 C.F.R. § 1630.2(j)(1)(i), an impairment "substantially limits" a major life activity only if it does so in comparison to "most

---

[1] Courts generally treat the ADA and Section 504 in the same manner. *See Delano-Pyle v. Victoria Cnty., Tex.*, 302 F.3d 567, 574 (5th Cir. 2002) ("The language in the ADA generally tracks the language set forth in the [Rehabilitation Act]," and "[j]urisprudence interpreting either section is applicable to both."). Thus, while the Court's analysis primarily focuses on the likelihood of success of Valles' ADA claim, the analysis is intended to apply equally to his Section 504 claim.

people in the general population." 29 C.F.R. 1630.2(j)(1)(ii). Further, "[a]lthough the ADA Amendment Act of 2008 lowered the standard that plaintiffs must meet to show that they are disabled . . . a plaintiff must still show substantial limitation." *Mann v. La. High Sch. Athletic Ass'n*, 535 Fed. App'x 405, 410 (5th Cir. 2013).

ACT does not dispute that by administering the ACT Test, it is subject to the ADA. However, ACT contends that Valles is not "disabled" under the ADA, and thus, he is not entitled to his requested accommodations on the exam. Valles argues he is entitled to accommodations because his ADHD and other conditions substantially limit his "short-term working memory and processing speed skills, along with moderate difficulties with auditory attention, auditory processing, and auditory working memory" (Dkt. #1 at ¶ 17). On initial review, the Court finds Valles has not established a substantial likelihood of success on the merits of his claims sufficient to warrant injunctive relief at this preliminary stage.

First, although concentrating and thinking are "major life activities" under the ADA, "the diagnosis of an impairment, alone, is not enough to show that a person is disabled under the ADA; a person must show that the impairment limits a major life activity." *Glueck v. Nat'l Conf. of Bar Exam'rs*, No. SA-17-CV-451, 2018 WL 3977891, at *4 (W.D. Tex. Aug. 20, 2018) (citing *Mann*, 535 Fed. App'x at 411) (finding that a doctor's diagnosis of a condition, by itself, was not sufficient to clearly establish that plaintiff was disabled under the ADA). In support of his case, Valles primarily points to a psychoeducational evaluation performed on January 22, 2022, by Dr. Lisa Elliott ("Dr. Elliot"), a licensed psychologist (*see* Dkt. #2, Exhibit 2). Dr. Elliot's evaluations state that Valles "demonstrated a significant weakness regarding both his short-term working memory abilities," which Valles measured in the 42nd percentile, and "his processing speed skills," which Valles measured in the 70th percentile (Dkt. #2, Exhibit 2 at p. 3). However, even with these

5

weaknesses, most of Valles' abilities still fell within the average, above average, or superior range. For example, on the General Abilities Index, an assessment that measures intellectual functioning, Valles' verbal comprehension index and perceptual reasoning index fell within the high average and superior to very superior ranges, while his working memory index fell within the average range. On the Weschler Individual Achievement Test, a test that measures academic functioning, Valles' reading composite skills measured upper above average, while his mathematics composite skills and written expression composite skills measured average.  Further, Valles "obtained a Full Scaled IQ of 126 (96th %tile, +/- 5), placing his performance solidly within the Superior range" (Dkt. #2, Exhibit 2 at p. 3). Dr. Elliot's evaluation admits that Valles "is a bright young man who demonstrated Very Superior intellectual capacity across his verbal comprehension abilities," and "upper Superior intellectual capacity across his perceptual reasoning abilities" (Dkt. #2, Exhibit 2 at p. 3).

In some specific areas, including arithmetic and oral reading fluency, Valles measured at below average or at the lower end of average. Considering Valles' performance ranges, Dr. Elliot concluded that Valles "demonstrated mild to moderate difficulty" with attention and concentration, auditory processing abilities, and auditory working memory skills, which supported a "mild diagnosis of Attention Deficit Hyperactivity Disorder, Predominantly Inattentive Presentation" (Dkt. #2, Exhibit 2 at p. 5). Because of these difficulties, Dr. Elliot recommended that Valles should receive accommodations in educational settings, including on standardized timed exams (Dkt. #2, Exhibit 2 at p. 6).

Valles also submitted a letter dated April 26, 2022, written by Dr. Rebecca Butler ("Dr. Butler"), Valles' pediatric physician since 2016 (*see* Dkt. #2, Exhibit 7). Dr. Butler stated that based on Valles' history of concussions over the last four years, as well as Dr. Elliot's report,

she supported Valles' request for accommodations on the ACT Test (Dkt. #2, Exhibit 7 at p. 2). However, in the same breath, Dr. Butler admitted:

> As [Valles'] long-time treating pediatrician, I never suspected that he had any type of learning disorders or deficits, and no suspected disorders or deficits had been reported to me either by [Valles] or his parents prior to last fall and the aforementioned series of concussions

(Dkt. #2, Exhibit 7 at p. 2).

Even accepting the diagnoses and evaluations from his physicians as true, Valles has not demonstrated that he will likely succeed in proving that he has a disability for which he is entitled to receive accommodations under the ADA. The evaluations show that Valles has difficulties due to his average or low average performance in some areas of mental functioning. Valles relies on these areas of lower performance to contend that without accommodations, his score on the ACT Test will not reflect his actual abilities "relative to his peers" (Dkt. #2 at p. 12). However, while Valles' conditions may put him at a disadvantage compared to other test-takers, this is not the standard for assessing whether Valles is "disabled" under the ADA. To succeed on his claims, Valles must show that he is substantially limited as compared to "most people in the general population." 29 C.F.R. 1630.2(j)(1)(ii). While both doctors noted Valles' demonstrated some difficulties with timed standardized tests, Valles' results never fell below the low average range, and neither doctor concluded that these difficulties substantially impaired Valles' abilities. Pointedly, Valles himself admits that he "has the intellectual aptitude to achieve scores on standardized examinations that exceed those of the average population, despite his multiple disabilities" (Dkt. #1 at p. 10). Moreover, Valles' long history of academic success weighs against a finding of disability (Dkt. #2, Exhibit 2 at p. 3). In sum, "[t]hese are not the type of results that show [Valles] may have been substantially impaired in a major life activity, and the evaluators did not opine further as to that question." *Glueck*, 2018 WL 3977891, at *5 (finding plaintiff's self-

7

reported symptoms and two doctor evaluations failed to demonstrate substantial impairment).

Based on the record, the Court finds that Valles has not satisfied his burden of demonstrating success on the merits. Further, although inability to show a likelihood of success on the merits is alone enough to deny Valles' motion, Valles has also failed to demonstrate that the other factors weigh in favor of injunctive relief.

**II.     Irreparable Harm**

The second factor a plaintiff must demonstrate is that it is "likely to suffer irreparable harm in the absence of preliminary relief." *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 20 (2008). "[H]arm is irreparable where there is no adequate remedy at law, such as monetary damages." *Janvey v. Alguire*, 647 F.3d 585, 600 (5th Cir. 2011). An injunction is appropriate only if the anticipated injury is imminent and not speculative. *Winter*, 555 U.S. at 22.

Valles has not shown that he will suffer irreparable harm absent injunctive relief. Valles contends that if he takes the July ACT Test without accommodations, he "will lack a fair and equal opportunity to show his aptitude and skill levels on the ACT [Test] and will thus lack a fair and equal opportunity to compete for early admission into, to receive scholarships and other benefits from, and to obtain proper placement considerations at his chosen colleges and universities" (Dkt. #1 at ¶ 9). First, Valles offers no support that delayed participation in these programs or even delayed entry into college is the kind of harm that warrants emergency injunctive relief. *See, e.g., Doe v. N.Y. Univ.*, 666 F.2d 761, 774 (2d Cir. 1981) (holding that "a one-year delay in obtaining admission to graduate school for the purpose of pursuing professional studies . . . is insufficient to warrant an injunction.").

Moreover, even if Valles does not receive accommodations for the July ACT Test, the harm Valles alleges in this case is simply too speculative to constitute irreparable harm. *See*

*Holland Am. Ins. Co. v. Succession of Roy*, 777 F.2d 992, 997 (5th Cir. 1985) ("Speculative injury is not sufficient; there must be more than unfounded fear on the part of the applicant."). At the Court's July 15th hearing on this motion, Valles represented that the application period for early admissions programs does not close until, at the earliest, late fall to winter of this year. After the July examination, the next ACT Test will be available for examinees to take as soon as September 2022. Thus, and as Valles agreed, examinees wishing to participate in early admissions programs could take either the July or the September ACT Test. In other words, should Valles succeed on the merits, he will presumably be able to take another ACT Test with the requested accommodations and use that score to apply for early admission. Therefore, Valles has not shown that taking the July ACT Test without accommodations would irreparably harm his opportunity to successfully participate in early admissions programs. Accordingly, Valles has not satisfied his burden of demonstrating that he is likely to suffer irreparable harm in the absence of injunctive relief.

**III.     Balance of Equities**

In assessing the third factor relevant to granting an injunction, "courts must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Winter*, 555 U.S. at 24 (citation omitted).

Here, the balance of equities also weighs against injunctive relief. Valles claims that "[g]ranting the requested injunction can cause Defendant ACT no harm" (Dkt. #2 at p. 22). The Court disagrees. While Valles may take the ACT Test with accommodations at a later date if he is successful on the merits, the award of potentially unfair accommodations on the July exam before a merits determination will affect the comparable validity of the scores of other examinees, and ACT contends it will have no remedy once it reports Valles' scores. *See, e.g., Rothberg v. LSAC*,

102 Fed. App'x 122, 126 (10th Cir. 2004) ("[W]hile [plaintiff] may eventually find a solution for the difficulty she faces if denied a preliminary injunction, the LSAC cannot hope for relief once the injunction issues."). Thus, the Court finds that Valles has not satisfied his burden of showing the balance of equities weigh in favor of granting his requested relief.

IV. **The Public Interest Factor**

Finally, "[i]n exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Winter*, 555 U.S. at 24 (quoting *Weinberger v. Romero-Barcelo*, 465 U.S. 305, 312 (1982)). This overlaps substantially with the balance-of-hardships requirement. *Id.*

Here, Valles has not shown that the public interest factor weighs in his favor. The public certainly has an interest in ensuring that those with disabilities are provided adequate accommodations, as required under the law. However, the public also has an interest in ensuring that the ADA is enforced according to its requirements. Because Valles has not demonstrated that it is likely he will succeed in showing that he was wrongfully denied accommodations under the ADA, the Court cannot find that the public interest weighs heavily for or against granting the requested relief.

### CONCLUSION

In sum, the Court finds a temporary restraining order is not warranted in this case because Valles has not satisfied the appropriate standard. It is, therefore, **ORDERED** that Plaintiff's Emergency Motion for a Temporary Restraining Order (Dkt. #2) is **DENIED.**

**IT IS SO ORDERED.**
**SIGNED this 15th day of July, 2022.**

AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE